UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BRYAN D. HOBBS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:15-cv-01200-TWP-MJD |
| | ) |
| CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration, | ) ) |
| | ) |
| Defendant. | ) |

### ENTRY ON JUDICIAL REVIEW

Plaintiff Bryan D. Hobbs ("Hobbs") requests judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), denying his applications for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"), and Supplemental Security Income ("SSI") under Title XVI of the Act.[1] For the following reasons, the Court **REMANDS** the decision of the Commissioner for further consideration.

### I.     BACKGROUND

**A.    Procedural History**

On May 18, 2012, Hobbs protectively filed applications for DIB and SSI, alleging a disability onset date of December 31, 2009, due to major depression, generalized anxiety, chronic pain, asthma, and high blood pressure. His claims were initially denied on August 10, 2012 and again on reconsideration on October 18, 2012. Hobbs filed a timely request for hearing and on

---

[1] In general, the legal standards applied are the same regardless of whether a claimant seeks Disability Insurance Benefits or Supplemental Security Income. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted decisions.

November 7, 2013, a hearing was held before Administrative Law Judge Albert J. Velasquez ("the ALJ"). Hobbs appeared in person and was represented by counsel. A vocational expert, Robert Barber ("the VE"), appeared and testified at the hearing. On December 20, 2013, the ALJ denied Hobbs' applications for DIB and SSI. Following this decision, Hobbs requested review by the Appeals Council and on June 4, 2015, the Appeals Council denied Hobbs' request for review of the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. On July 31, 2015, Hobbs filed this action for judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

**B.    Factual History**

At the time of his alleged disability onset date in 2009, Hobbs was 41 years old, and he was 45 years old at the time of the ALJ's decision. He obtained a high school education. Prior to the onset of his alleged disability, Hobbs had an employment history of working as a kitchen helper and packager ([Filing No. 14 at 2](Filing No. 14 at 2)).

Starting in July 2006, Hobbs was experiencing paranoid thinking, so he sought mental health treatment at Meridian Services. He received individual and group therapy a couple of times a month for a few months. Approximately six years later, beginning in May 2012, Hobbs began experiencing continuous depressive episodes. Over the course of the next year, Hobbs met with and received treatment from nine mental health professionals. He usually received counseling twice a month. During that time period, he reported various symptoms and some subsequent improvements of those symptoms, including lack of motivation, depression, and an inability to sleep and work. Hobbs was assigned a global functioning assessment score by the mental health professionals at each of his appointments. His score ranged from 40 to 58. The highest score that he received, 58, was assigned by Renee Nevins, Ph.D. ("Dr. Nevins"), who completed Hobbs'

consultative examination during the disability determination process. When Dr. Nevins examined Hobbs in August 2012, she diagnosed him with depressive disorder. Dr. Nevins opined that Hobbs "should be capable of attending to a simple, repetitive activity although this is likely to be impacted by depression and fluctuating levels of attention and effort," and he should be able to "complete most job requirements with minimal supervision." (Filing No. 12-7 at 85.)

Later in August 2012, state agency psychiatrist, Kari Kennedy, Psy.D. ("Dr. Kennedy"), reviewed Hobbs' records and completed a psychiatric review technique form. Dr. Kennedy opined that Hobbs was only mildly restricted in his activities of daily living and no more than moderately limited in social functioning and in maintaining concentration, persistence, and pace, with no episodes of decompensation (Filing No. 12-7 at 87–97). Dr. Kennedy also completed a mental residual functional capacity assessment of Hobbs (Filing No. 12-8 at 2–4). She reported that Hobbs could remain alert and attentive and appeared capable of semiskilled work. State reviewing psychologist F. Kladder, Ph.D., affirmed Dr. Kennedy's findings (Filing No. 12-8 at 6).

At the administrative hearing before the ALJ on November 7, 2013, Hobbs testified that every day he has trouble focusing. Because of a lack of motivation, he felt that he could not work. He also had trouble getting along with people, especially those who were close to him. Hobbs stated that he attends therapy sessions twice a month and takes medication to help with his mental health issues. However, he stated that the medication reduced his ability to properly function throughout the day. He testified that, while he is able to complete basic life activities like taking his medication and showering, his mother and others have to remind him.

Hobbs further testified that he becomes anxious about the smallest things. He stated that he enjoyed a few hobbies, including building model cars. However, his patience has diminished, and his stress has increased, so he no longer participates in his hobbies. He also testified that he

3

no longer has the motor skills to be able to keep up with his hobbies. He testified that he suffered from anxiety whenever he thinks about leaving home and going to therapy sessions. Hobbs testified that his anxiety caused him to have mood swings, which prevented him from being able to keep a job as a dishwasher because he lost his patience and got easily frustrated. However, despite all of his symptoms, Hobbs maintained that he would be able to take care of his finances and stick to a budget.

During the hearing, the ALJ noted that one of the therapists that was treating Hobbs said that Hobbs had trouble telling the truth, so the ALJ questioned Hobbs about his honesty. Hobbs testified that he did not have any trouble telling the truth; however, he acknowledged that he "might exaggerate some things." (Filing No. 12-2 at 51.)

After Hobbs testimony, the ALJ and Hobbs' attorney examined the VE, who had reviewed Hobbs' work history and listened to testimony during the hearing. The VE listed all of Hobbs' past jobs and the skill level required each position. The ALJ then presented a hypothetical to the VE of a person with Hobbs' background who had "no exertional limitations; however, the work should require no more than two or three step operations, should not require reading or mathematics, and should not require factory-like quotas." (Filing No. 12-2 at 57.) The ALJ asked the VE to list jobs that such a person could perform. The VE responded that such a person could perform the work that Hobbs previously had performed as a kitchen helper and packager. The VE also listed other jobs in the economy that the hypothetical person could perform, which included apparel sorter, packing line worker, and housekeeper. Hobbs' attorney asked the VE if it would be tolerated if the hypothetical person was absent four days a month and off-task about twenty percent of the workday. The VE opined that this would not be tolerated by an employer. Hobbs' attorney then modified the ALJ's hypothetical to include the limitation of no public interaction

4

and only occasional interaction with coworkers. The VE opined that such limitations would eliminate only the phonebook delivery job as potential employment, which was a position held by Hobbs at one time.

## II. DISABILITY AND STANDARD OF REVIEW

Under the Act, a claimant may be entitled to DIB or SSI only after he establishes that he is disabled. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

The Commissioner employs a five-step sequential analysis to determine whether a claimant is disabled. At step one, if the claimant is engaged in substantial gainful activity, he is not disabled despite his medical condition and other factors. 20 C.F.R. § 416.920(a)(4)(i). At step two, if the claimant does not have a "severe" impairment that meets the durational requirement, he is not disabled. 20 C.F.R. § 416.920(a)(4)(ii). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, and whether the impairment meets the twelve month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 416.920(a)(4)(iii).

If the claimant's impairments do not meet or medically equal one of the impairments on the Listing of Impairments, then his residual functional capacity will be assessed and used for the fourth and fifth steps. Residual functional capacity ("RFC") is the "maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1); SSR 96-8p). At step four, if the claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). At the fifth and final step, it must be determined whether the claimant can perform any other work in the relevant economy, given his RFC and considering his age, education, and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). The claimant is not disabled if he can perform any other work in the relevant economy.

The combined effect of all the impairments of the claimant shall be considered throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The burden of proof is on the claimant for the first four steps; it then shifts to the Commissioner for the fifth step. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

Section 405(g) of the Act gives the court "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). In reviewing the ALJ's decision, this Court must uphold the ALJ's findings of fact if the findings are supported by substantial evidence and no error of law occurred. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Further, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). While the Court reviews the ALJ's decision deferentially, the Court cannot uphold

the ALJ's decision if the decision "fails to mention highly pertinent evidence, . . . or that because of contradictions or missing premises fails to build a logical bridge between the facts of the case and the outcome." *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010) (citations omitted).

The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). The ALJ is required to articulate only a minimal, but legitimate, justification for his acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004).

### III. THE ALJ'S DECISION

The ALJ first determined that Hobbs met the insured status requirement of the Act through September 30, 2014. The ALJ then began the five-step analysis. At step one, the ALJ found that Hobbs had not engaged in substantial gainful activity since December 31, 2009, the alleged onset date. At step two, the ALJ found that Hobbs had the following severe impairments: hypertension, generalized anxiety disorder, and cannabis abuse. At step three, the ALJ concluded that Hobbs does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

The ALJ then determined that Hobbs has an RFC to perform "a full range of work at all exertional levels but with the following nonexertional limitations: the work should require no more than two or three steps. The work should not require reading, mathematics, or factory-like quotas." (Filing No. 12-2 at 28.)

At step four, the ALJ determined that Hobbs was able to perform his past work as a kitchen helper and packager. At step five, the ALJ determined that Hobbs is not disabled because there

7

are jobs that exist in significant numbers in the national economy that Hobbs could perform, considering his age, education, past work experience, and RFC. Therefore, the ALJ denied Hobbs' applications for DIB and SSI because he is not disabled.

## IV. DISCUSSION

In his request for judicial review, Hobbs asserts a single basis for remanding this case to the ALJ for further proceedings. He argues that the ALJ did not sufficiently question the VE because the ALJ did not specifically include in the hypothetical that Hobbs had moderate limitations in concentration, persistence, and pace. Hobbs argues that the ALJ should have explicitly included this limitation in the hypothetical presented to the VE so that he could properly assess Hobbs' capacity to work certain jobs. He also argues that the ALJ should have included something in the hypothetical that would have alerted the VE to Hobbs' stress-related problems. Hobbs does not dispute the findings of the ALJ regarding his physical impairments.

Relying on *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619–20 (7th Cir. 2010), Hobbs asserts that an ALJ's hypothetical question to a vocational expert must include all limitations supported by the medical record, including limitations in concentration, persistence, and pace. Hobbs acknowledges that the Seventh Circuit has recognized three exceptions to this general rule but explains that the exceptions do not apply.

The first exception is that the vocational expert's familiarity with the claimant's limitations, despite any gaps in the hypothetical, shows that the vocational expert independently reviewed the medical record or heard testimony directly addressing these limitations. *Id.* at 619. Hobbs explains that this exception to the general rule does not apply because there is no evidence that the VE reviewed his medical history or heard testimony about Hobbs' ability to sustain work.

The second exception is that the ALJ's alternative phrasing in the hypothetical specifically excludes those tasks that someone with the claimant's limitations would be unable to perform. *Id.* The Seventh Circuit usually applies this exception when a claimant's limitations are stress- or panic-related and the hypothetical restricts the claimant to low-stress work. *Id.* Hobbs asserts that in this case, the ALJ did not use the term "low-stress work," his limitations are not primarily stress- or panic-related, and the limitations in the hypothetical did not directly relate to his impairments.

The third exception presents a closer call in that the ALJ's hypothetical does not include limitations in concentration, persistence, or pace, but it does include the specific underlying conditions. This exception applies when, on the facts of the case, the link between the claimant's underlying conditions and his concentration difficulties is readily apparent. *Id.* at 620. Hobbs explains that this exception does not apply because the ALJ did not mention his underlying conditions in the hypothetical.

In response to Hobbs' argument, the Commissioner contends that the ALJ properly accounted for all of Hobbs' credible mental limitations in the hypothetical presented to the VE. The Commissioner asserts that there is not a *per se* requirement for ALJs to explicitly mention "concentration, persistence, and pace" in the hypothetical as long as the ALJ takes the limitations that are supported by the record into account, relying on *O'Connor-Spinner*, 627 F.3d at 619. The Commissioner also argues that the hypothetical was sufficient because the VE was present at the hearing, so he heard the testimony provided by Hobbs, and he reviewed the record. The Commissioner asserts that, because the ALJ relied on Dr. Kennedy's findings to determine the RFC, substantial evidence supports the ALJ's decision even without more in the hypothetical presented to the VE.

Replying to the Commissioner's response, Hobbs explains that the hypothetical presented to the VE did not incorporate Dr. Kennedy's opinion because Dr. Kennedy's opinion stated that Hobbs could perform semi-skilled work, whereas the hypothetical only accounted for unskilled work. Hobbs also asserts that the hypothetical did not account for symptoms that might trigger his limitations. Regarding the assertion that the VE was present at the hearing and reviewed the record, Hobbs contends that this is insufficient to cure the error in the hypothetical because the record does not indicate that the VE reviewed Hobbs' medical records in addition to his work history.

When an ALJ poses a hypothetical to a vocational expert, the ALJ "must incorporate all of the claimant's limitations supported by the medical record." *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015) (citations omitted). The ALJ must include all limitations that he accepts as credible. *Schmidt v. Astrue*, 496 F.3d 833, 846 (7th Cir. 2007). The court gives special deference to the ALJ's credibility determinations. *Scheck*, 357 F.3d at 703. However, if an ALJ's hypothetical fails to encompass all the credible limitations, then such a hypothetical will be insufficient. *See Varga*, 794 F.3d at 813–16. As the Seventh Circuit has noted,

> Our cases generally have required the ALJ to orient the [vocational expert] to the totality of a claimant's limitations. Among the limitations the [vocational expert] must consider are deficiencies of concentration, persistence and pace. Our cases, taken together, suggest that the most effective way to ensure that the [vocational expert] is apprised fully of the claimant's limitations is to include all of them directly in the hypothetical.

*O'Connor-Spinner*, 627 F.3d at 619 (citations omitted). The Commissioner correctly points out that the Seventh Circuit has "not insisted, however, on a per se requirement that this specific terminology ('concentration, persistence and pace') be used in the hypothetical in all cases." *Id.*

The Seventh Circuit has recognized three exceptions to this general rule of including specific language in the hypothetical, which exceptions were noted above. *Id.* at 619–20.

10

In the context of presenting a hypothetical about an individual with limitations in concentration, persistence and pace, the Seventh Circuit made clear in *O'Connor-Spinner* that,

> In most cases, however, employing terms like "simple, repetitive tasks" on their own will not necessarily exclude from the [vocational expert's] consideration those positions that present significant problems of concentration, persistence and pace. *Stewart*, 561 F.3d at 684–85 (limiting hypothetical to simple, routine tasks did not account for limitations of concentration, persistence and pace); *see also Craft v. Astrue*, 539 F.3d 668, 677–78 (7th Cir. 2008) (restricting hypothetical to unskilled work did not consider difficulties with memory, concentration or mood swings); *Ramirez v. Barnhart*, 372 F.3d 546, 554 (3d Cir. 2004) (allowing [vocational expert] to consider only one- or two-step tasks did not account for limitations of pace) . . . .

*Id.* at 620.

In this case, the ALJ gave considerable weight to the assessments in the record and the medical expert's opinion that Hobbs has moderate limitations in concentration, persistence, and pace. At step three of the disability determination, the ALJ determined that Hobbs had such limitations. Therefore, these limitations should have been accounted for in the hypothetical.

The hypothetical presented to the VE was of a person with "no exertional limitations; however, the work should require no more than two or three step operations, should not require reading or mathematics, and should not require factory-like quotas." (Filing No. 12-2 at 57.) Similar to the case of *O'Connor-Spinner*, this hypothetical fails to adequately incorporate or address limitations in concentration, persistence, and pace. The record does not indicate whether the VE reviewed any of Hobbs' medical records. None of the exceptions to the general rule noted in *O'Connor-Spinner* apply in this case. Thus, the Court is left to guess what the VE considered when determining work capabilities and opportunities for Hobbs. Because limitations in concentration, persistence, and pace were not in some way included in the hypothetical presented to the VE, the ALJ's step 4 and step 5 determinations are not supported by substantial evidence. Therefore, remand is appropriate for additional proceedings.

## V. CONCLUSION

For the reasons set forth above, the final decision of the Commissioner is **REMANDED** for further proceedings as authorized by Sentence Four of 42 U.S.C. § 405(g).

**SO ORDERED.**

Date: 6/20/2016

_____
TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Joseph W. Shull
jshull@joeshull.com

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE
kathryn.olivier@usdoj.gov